**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| MARSHAUN THOMAS, | : | |
| | : | Civil Action No. 09-5339 (KSH) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent. | : | |

**HAYDEN, District Judge:**

*Pro se* petitioner Marshaun Thomas ("Thomas"), confined at a United States Penitentiary in Lewisburg, Pennsylvania, has filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, challenging a judgment and sentence imposed by this court in *United States v. Thomas*, No. 01-cr-0058, ECF No. 57 (D.N.J. entered Oct. 22, 2003). For the reasons stated below, the court denies the Motion.

**I.  FACTUAL BACKGROUND**

In the late 1990s, Thomas, together with a number of childhood friends and family members, formed a rap group known as "Van Nostrand Soldiers Out Politicking" ("VSOP").[1] This group later morphed into a street gang, and members of the group performed various crimes such as selling drugs and committing robberies, as a way to finance the group's music ventures.

In August of 1998, Thomas and other VSOP members were driving in Jersey City, New Jersey, when they came across four young men talking on a street corner. Thomas mentioned to

---

[1] Unless otherwise cited, the Court incorporates Thomas's version of the background information directly from his own brief, ECF No. 1-1.

his fellow members that he wanted to "get a jacket," and told the driver to pull over the car. Thomas's Presentence Investigation Report ("PSR") at 7. Several VSOP members, including Thomas, exited the car, and Thomas approached the group at the corner. Thomas then drew a gun from his waistband, pointed at the group, and yelled, "You know what this is! Get on the ground!" *Id.* at 8. One individual, Alex Irizarry ("Irizarry"), did not fully comply and turned toward Thomas, at which point Thomas fired one shot at Irizarry. Thomas and his VSOP companions fled the scene, without robbing the intended victims. *Id.* Irizarry later died of the gunshot wound.

In October of 2000, Thomas, along with other VSOP members, participated in a VSOP-planned bank robbery, and robbed a PCN Bank in Jersey City. The robbery resulted in the theft of $8,000, and the participants split the proceeds. In the motion, Thomas fully admits to have committed both crimes.

Respondent originally charged Thomas with a two-count indictment, alleging that he (1) committed a bank robbery by force or violence, in violation of 18 U.S.C. § 2113(a), and (2) used a firearm during a violent crime, in violation of 18 U.S.C. § 924(c)(1)(A). *See United States v. Thomas*, No. 01-0058 (D.N.J. filed Jan. 31, 2001) ("Crim. Dkt."). After plea negotiations, Thomas waived his right to indictment and pled guilty to a superseding information, charging him with one count of racketeering offense under the Racketeer Influenced and Corruption Organization Act ("RICO"). *See* Crim. Dkt, ECF No. 43; ECF No. 5-1. The information further stated that Thomas, (1) "while engaged in an attempt to commit robbery, and in the flight therefrom, did cause the death of Alex Irizarry, in violation of N.J.S.A. Sections 2C:11-3(3) and 2C:2-6," which was a crime of felony murder, ECF No. 5-1 at 3, PSR at 18; and (2) "together with others, knowingly and willfully robbed the 'PNC Bank' of a sum of United States currency, in violation of N.J.S.A.

Sections 2C:15-1 and 2C:2-6," which was a crime of bank robbery.  *Id.*  The court then sentenced him to thirty years imprisonment with five years of supervised release.  Crim. Dkt., ECF No. 57.

Thomas then appealed, and the Third Circuit affirmed the conviction and sentence.  *See United States v. Thomas*, 389 F.3d 424 (3d Cir. 2004) ("*Thomas I*").  After granting cert, the Supreme Court remanded the case for resentencing in light of *United States v. Booker*, 543 U.S. 220 (2005), which was decided after the court issued Thomas's sentence.  *United States v. Thomas*, 286 F. App'x 779, 780 (3d Cir. 2008) ("*Thomas II*").  The court resentenced Thomas to the same 360-month sentence, but credited him with 80 months of time served and good time accrued.  *Id.* at 780-81.  Again Thomas appealed, and again the Third Circuit affirmed the conviction and sentence.  *Id.* at 781.  This motion followed.

## II.     STANDARD OF REVIEW

A prisoner in federal custody under sentence of a federal court "may move the court which imposed the sentence to vacate, set aside or correct the sentence" upon three grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" or (3) "that the sentence was in excess of the maximum authorized by law."  28 U.S.C. § 2255(a).

A criminal defendant bears the burden of establishing his entitlement to § 2255 relief.  *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005).  Moreover, as a § 2255 motion to vacate is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal."  *United States v. Frady*, 456 U.S. 152, 166 (1982), *cited in United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014).  In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record."  *United States v. Booth*, 432 F.3d

3

542, 545 (3d Cir. 2005) (internal quotation marks and citation omitted). "It is the policy of the courts to give a liberal construction to *pro se* habeas petitions." *Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010). The Court may dismiss the motion without holding an evidentiary hearing if the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. *See* 28 U.S.C. § 2255(b); *Liu v. United States*, No. 11–4646, 2013 WL 4538293, at *9 (D.N.J. Aug.26, 2013) (citing *Booth*, 432 F.3d at 545–46).

### III.   DISCUSSION

Thomas raises three grounds for relief in the motion, that (1) this court erred in accepting his guilty plea because there was insufficient factual basis to establish that he was guilty of the racketeering offense; (2) counsel was ineffective in advising him of the crime he was pleading to, resulting in him pleading guilty to a crime he was actually innocent of; and (3) counsel was ineffective for filing a brief under *Anders v. California*, 386 U.S. 738 (1967) on direct appeal, opining that there were no meritorious claims on appeal. The court addresses each of these claims separately.

**A.  Claim Against District Court**

Respondent argues that this claim should be denied because (1) the issue had been litigated on direct appeal, and (2) even if it was not actually litigated on direct appeal, because it could have been, Thomas is procedurally barred from raising this claim on habeas review. The court rejects respondent's first argument. On appeal after resentencing, the Third Circuit opined that "*[w]hat is not before us* is Thomas's argument that one of the two racketeering acts charged in the information to which he pled guilty was not related to the enterprise or to the other racketeering act, and, thus, that the District Court erred in accepting his guilty plea." *Thomas II*, 286 F. App'x at 780 n.2 (emphasis added). The claim that was held not to be before the Third Circuit is the

exact claim Thomas raises in this court. Although respondent contends that the Third Circuit has addressed this court's Rule 11 hearing on two separate occasions, it is clear the Third Circuit itself found that this issue had never been litigated in the Third Circuit. This court finds no reason to hold otherwise.

However, the court agrees with respondent on the default argument. In *United States v. Frady*, 456 U.S. 152 (1982), the Supreme Court held that "we have long and consistently affirmed that a collateral challenge may not do service for an appeal." *Id.* at 165. The *Frady* court went on to explain:

> Once the defendant's chance to appeal has been waived or exhausted, however, we are entitled to presume he stands fairly and finally convicted, especially when, as here, he already has had a fair opportunity to present his federal claims to a federal forum. Our trial and appellate procedures are not so unreliable that we may not afford their completed operation any binding effect beyond the next in a series of endless postconviction collateral attacks. To the contrary, a final judgment commands respect.

*Id.* at 164-65. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal citations omitted); *see United States v. Calhoun*, 600 F. App'x 842, 845 n.2 (3d Cir. 2015) (finding that a petitioner who failed to raise a claim on direct appeal "defaulted it"). In this matter, the Third Circuit, after finding this claim was not before it, went on to state that "[t]his issue could have been and should have been raised on direct appeal, but was not, and is *waived*." *Thomas II*, 286 F. App'x at 780 n.2 (emphasis added). Again, this court finds no reason to disturb that holding. Furthermore, despite having been advised by the Third Circuit that this claim had been deemed waived, Thomas provides no explanation whatsoever in the motion why

5

he did not or could not raise this claim on direct appeal.[2]  As such, the court considers this claim defaulted.

Even if the court addresses the substance of this claim, the court finds it without merit. Thomas argues that the court erred in finding his felony murder offense as one of the two predicate offenses required for the racketeering charge, because Thomas committed that offense for personal reasons, not in furtherance of the enterprise's pursuits.  *See* ECF No. 1-1 at 7-8.  To establish an offense as a predicate offense under RICO, "the government may establish this element by showing either (1) the defendant is enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise or (2) the predicate offenses are related to the activities of that enterprise." *United States v. Irizarry*, 341 F.3d 273, 304 (3d Cir. 2003).  "It is not enough . . . merely to show that a person engaged in racketeering has an otherwise legitimate interest in an enterprise.  Rather, it must be established firmly that there is a nexus between the interest and the alleged racketeering activities." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1190 (3d Cir. 1993); *see United States v. Daidone*, 471 F.3d 371, 375 (2d Cir. 2006) ("[P]redicate acts must be related to each other ('horizontal' relatedness), and they must be related to the enterprise ('vertical' relatedness).").

Thomas's argument centers on his contention that the attempted robbery was for a jacket, which could not have been for the benefit of the enterprise. ECF No. 1-1 at 7-8. The record belies this contention.  In the PSR, it was mentioned that Thomas "announced he wanted to 'get a

---

[2]  Indeed, while one of Thomas's habeas claims implies it was counsel's fault for not raising this issue on direct appeal, the record shows that after filing the *Anders* brief, counsel fully advised Thomas of his right to file a *pro se* brief, which Thomas did file. *Thomas I*, 389 F.3d at 425. Thomas did not raise his "factual basis" claim in his *pro se* brief, *see id.*, which undoubtedly was the reason for the Third Circuit's waiver holding in *Thomas II*.

jacket.'" PSR at 9. However, during sentencing, Thomas argued strenuously that the attempted robbery was carried out in conjunction with other members of the enterprise, and for the benefit of the enterprise. For example, during his interview with the probation officer, he stated that he and members of his enterprise "told the individuals to get on their knees and demanded their *money*." *Id.* at 20 (emphasis added). Moreover, after reviewing the initial PSR, Thomas, through counsel, filed an objection to the report, contending that it was not Thomas who decided to rob the individuals, but "*they* decided to rob . . . ." *Id.* at 36 (emphasis in the original). Consequently, while Thomas appears to sing a completely different tune here to support his habeas claims, the evidence shows, at the time the plea agreement was entered and sentencing occurred, Thomas admitted that the attempted robbery was carried out as part of the enterprise, and for the purposes of more than just to obtain a jacket. The court will not give credence to Thomas's after-the-fact characterization of the events that is not supported by the existing record. *See Booth*, 432 F.3d at 545. Accordingly, the Court denies relief on this ground.

### B. Ineffective Assistance of Counsel During Plea

Next, Thomas claims that trial counsel was ineffective in advising him of the elements of the racketeering offense. Specifically, Thomas alleges that counsel did not adequately explain to him what constitutes a predicate offense under RICO. Thomas contends that had he been adequately advised of the applicable standard, he would have realized that he was actually innocent of the crime he was being charged with, and would not have entered into the plea agreement.

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). A claim that counsel's

7

assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. *Id.* at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness[.]" *Hinton v. Alabama*, 134 S.Ct. 1081, 1083 (2014) (per curiam). To satisfy the prejudice prong, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693.[3] To establish prejudice, the defendant must show that "there is a reasonable probability that the result of the trial would have been different absent the deficient act or omission." *Hinton*, 134 S.Ct. at 1083.

The same two-part standard is applicable to ineffective assistance claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). In the plea context, "counsel is required to give a defendant enough information to make a reasonably informed decision whether to accept a plea offer." *United States v. Bui*, 769 F.3d 831, 835 (3d Cir. 2014). The defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Jesus-Nunez*, 576 F. App'x 103, 106 (3d Cir. 2014) (quoting *Hill*, 474 U.S. at 59).

Here, Thomas cannot satisfy either prong under *Strickland*. First, the court does not find that counsel provided ineffective assistance. Although the record does not contain evidence of

---

[3]   The reasonable probability standard is less demanding than the preponderance of the evidence standard. *See Nix v. Whiteside*, 475 U.S. 157, 175 (1986); *Baker v. Barbo*, 177 F.3d 149, 154 (3d Cir. 1999).

8

what advice counsel actually provided to Thomas, whatever deficiency or error that may have existed in that advice was cured by the plea agreement and the plea colloquy. *See United States v. Fazio*, 795 F.3d 421, 428 (3d Cir. 2015) ("[A]ny possible error in plea counsel's advice to Fazio was cured by the plea agreement and at the plea colloquy."). As stated in the factual background, Thomas waived prosecution by indictment and pled guilty to an information. That information clearly spelled out the elements of the racketeering offense, specifically stating that, "[t]he pattern of racketeering activity consisted of the following acts, which are related to each other, pose the threat of continued racketeering activity, relate to the affairs of the criminal enterprise VSOP, and were committed as part of, and in furtherance of, the affairs of the criminal enterprise[.]" ECF No. 5-1 at 2. The information then listed the two predicate offenses, one of which was the attempted robbery that resulted in felony murder. *Id.* at 3. As such, Thomas was fully informed that the predicate acts must be related to each other, related to the affairs of the enterprise, and committed in furtherance of the enterprise. Thomas's claim here, that the felony murder was not related to the affairs of the enterprise, is simply contradictory to what he understood he was pleading guilty to.

This conclusion is fully supported by the plea colloquy. At the plea hearing, this court advised Thomas that the charging document is an information, and that he had a right to be charged by indictment of a grand jury, but he could give up that right and instead consent to being charged by information. ECF No. 5-9 at 7:10-14. Thomas then confirmed that (1) he discussed his right to indictment with his counsel, (2) he understood that right, (3) no threats or promise had been made to get him to give up that right, (4) he wished to waive that right and consent to being charged by information, and (5) he was fully satisfied with the representation and advice provided by counsel. *Id.* at 8:7-9:2.

9

Thomas also confirmed that he was willingly pleading guilty to the charges contained in the information. *Id.* at 9:3-7. Later in the hearing, the court explained to Thomas that the racketeering offense he was pleading guilty to had two racketeering acts, one being the felony murder, the other being the bank robbery. *Id.* at 9:18-10:18. The court then asked again if Thomas had discussed the plea agreement with counsel, and whether, with counsel's explanation and advice, he fully understood the terms of the plea agreement, both of which Thomas answered in the affirmative. *Id.* at 12:1-13:1. Therefore, there is no evidence whatsoever that at the time of plea, Thomas was confused about or did not understand the charges he was pleading guilty to. Thomas was fully aware of the charges, including the fact that the racketeering offense required at least two predicate acts, both of which must be related to the affairs of the enterprise. Thus, Thomas does not satisfy the first prong of the *Strickland* test, since any perceived deficiency in counsel's advice was cured by the plea agreement and the plea colloquy.

Even if the court assumes that counsel provided ineffective assistance, Thomas also does not satisfy the prejudice prong of the *Strickland* test. As the court already found above, evidence shows Thomas admitted that the attempted robbery was carried out with other members of the enterprise, that the decision to attempt the robbery was made jointly by all of the members involved, and that the purpose was to obtain money, in furtherance of the affairs of the enterprise. *See supra* at 7. In other words, Thomas admitted that he was, in fact, guilty of the crime that he pled guilty to, notwithstanding Thomas's characterization of the crime now. A more thorough explanation of the crime would not have changed the essential nature of the crime, so as to make him "actually innocent" as he now alleges—it would simply have confirmed and strengthened Thomas's understanding that he was pleading guilty to a crime he admitted to. Thus, the record does not support a finding that Thomas would have changed his mind about the guilty plea had he

10

been provided a more effective assistance by counsel.[4] Accordingly, the court denies relief on this ground.

### C. Ineffective Assistance of Counsel on Appeal

Finally, Thomas claims that counsel was ineffective for having filed an *Anders* brief on appeal. Thomas argues that because there was no factual basis for Thomas's conviction, counsel's filing of the *Anders* brief was *de facto* ineffective assistance, for not having recognized a meritorious claim.

In *Anders*, the Supreme Court held that:

> [Counsel's] role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous.

386 U.S. at 744. In that regard, it is the court of appeals, not counsel, who determines whether the *Anders* brief is adequate to permit withdraw. Once that determination is made and a withdraw permitted, there can be no ineffective assistance of counsel, as the court has already examined the

---

[4] The court further notes the PSR indicated that Thomas was charged by the state of New Jersey for the murder of Irizarry and the robbery of the PNC Bank. PSR at 13. In federal court, Thomas was originally indicted by respondent only for the bank robbery, which carried an offense level of 27, *id.* at 21, but Thomas subsequently waived indictment and pled guilty to felony murder as well as the bank robbery, as incorporated into his RICO charge, raising his total offense level to 43. *Id.* Given that Thomas would waive indictment and plead guilty to a crime that carried a much higher offense level and greater sentence, it is probable that he agreed to the plea agreement in order to avoid state prosecution of those crimes, which may have resulted in the conviction of a more serious charge, and the likelihood of incarceration in a state prison. These considerations also would not have changed had Thomas been given a more thorough explanation of the racketeering offense.

brief and determined that there are no meritorious claims on appeal. *See Patillo v. United States*, No. 11-0391, 2012 WL 2087450, at *7 (D.N.J. June 7, 2012).

Here, in *Thomas I*, the Third Circuit examined counsel's *Anders* brief and found the case wholly meritless. 389 F.3d at 425, 429. In doing so, the Third Circuit concluded that counsel had fully satisfied all of his obligations under *Anders*, including notifying Thomas of the filing of the *Anders* brief, and that he had the opportunity to file his own *pro se* brief. *Id.* at 425-26. The Third Circuit examined all of the issues raised in the *Anders* brief as well as Thomas's *pro se* brief, and determined that there were no meritorious claims, and dismissed the appeal. *Id.* at 429. As such, it was a court, not counsel, who had determined that the case was meritless. There can be no ineffective assistance of counsel under these circumstances.[5] Furthermore, this court has already found that Thomas's "factual basis" claim is meritless, *see supra*, so even if counsel was in fact ineffective, for example, by totally ignoring his duties as appellate counsel and filed no brief at all, there would have been no prejudice. Therefore, the court denies relief on this ground.

### D. Certificate of Appealability

Last, the Court denies a certificate of appealability ("COA"). Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2255. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that

---

[5] It would be curious indeed if the court was to hold that counsel, who had availed himself properly to a procedure fully sanctioned by the Supreme Court in *Anders*, a procedure that has been accepted, adopted, and practiced by judges and lawyers everywhere for almost fifty years, somehow provided ineffective assistance of counsel.

jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, no certificate of appealability shall issue. *See* Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

### IV.   CONCLUSION

For the reasons set forth above, Petitioner's Motion is DENIED and the Court denies a certificate of appealability.

_s/ Katharine S. Hayden
**Katharine S. Hayden, U.S.D.J.**

Dated:  June 1, 2016